**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ELSA COLLAZO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     2:11-CV-00108-PPS-APR |
| | ) |
| ENTERPRISE  HOLDINGS, INC., d/b/a | ) |
| ENTERPRISE RENT-A-CAR, and | ) |
| PRERAC, INC., d/b/a ENTERPRISE | ) |
| RENT-A-CAR, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This diversity case arises out of a trolley accident in Puerto Rico in which plaintiff Elsa

Collazo, who was riding the trolley from the airport to pick up a car she had rented from

Enterprise, was ejected from her seat during a sudden stop.  Collazo alleges both negligence and

breach of contract against Enterprise Holdings, Inc. and its Puerto Rican subsidiary, Prerac, Inc.

Both Defendants have filed nearly identical motions to dismiss [DE 19 & 22], arguing that the

Court lacks personal jurisdiction, and that venue is improper [*Id*.].  Collazo's response requests

that I transfer the case to the district court in Puerto Rico, should I find that personal jurisdiction

is lacking [DE 28].  For the reasons explained below, I agree that the Court lacks jurisdiction

over these Defendants, so I need not reach the improper venue arguments.  However, I find that,

rather than dismissal, the interests of justice favor a transfer of Collazo's suit to the district court

in Puerto Rico, where Collazo's injury occurred.  So the motions to dismiss are **DENIED**, and

Collazo's request for transfer is **GRANTED.**

**BACKGROUND**

Collazo, an Indiana citizen, alleges that she entered into an agreement with the Defendants to rent a car, for her use during a visit to Puerto Rico [DE 16, ¶ 6]. As part of the agreement, Defendants were to provide her with transportation by trolley from a Puerto Rico airport to an Enterprise rental car terminal there [*Id.*, ¶ 7]. On April 27, 2010, while Collazo was riding in the trolley down an expressway in Carolina, Puerto Rico, Collazo was partially ejected from her seat and injured, following a sudden stop [*Id.*, ¶¶ 8-9 & 18]. Collazo's negligence and breach of contract claims against Defendants are based on her allegation that the trolley was not equipped with a seatbelt, which she asserts is a violation of Puerto Rico law and a breach of Defendants' agreement to provide her with safe transportation [*Id.*, ¶¶ 15, 17 & 21].

Enterprise Holdings, a Missouri corporation with its principal place of business in Missouri, and Prerac, a Puerto Rico corporation with a principal place of business in Puerto Rico, contend that the Court lacks personal jurisdiction over them because neither conducts business in Indiana. Collazo argues that Defendants are subject to general personal jurisdiction on the basis of the "interactivity" of their websites – enterprise.com and erac.com – which are accessible in Indiana. She also asserts an alter ego theory, arguing that general personal jurisdiction can be exercised on the ground that Enterprise Holdings and its subsidiaries, including those in Puerto Rico (*i.e.*, Prerac) and Indiana, "function with a single identity" [DE 28 at 10]. Finally, Collazo argues that Defendants are subject to specific personal jurisdiction based on her rental car contract, as well as the relationship between her claims and Defendants' websites.

**DISCUSSION**

**I.      Personal Jurisdiction**

The first issue is whether this Court has personal jurisdiction over the Defendants.  A

federal court's personal jurisdiction is determined by the laws of its forum state.  *Tamburo v.*

*Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  Indiana's long-arm statute allows jurisdiction so

long as it's consistent with the Due Process Clause of the Fourteenth Amendment.  Ind. R. Trial.

P. 4.4(a); *Rodriguez v. Cavitec AG*, No. 1:09-CV-336, 2010 WL 2519715, at *4 (N.D. Ind. June

14, 2010).  As a result, the state statutory and federal constitutional inquiries merge, and the

determinative issue is whether the exercise of jurisdiction over these Defendants comports with

the federal Due Process Clause.  *Tamburo*, 601 F.3d at 700; *Terry McKannan v. National*

*Council of Young Men's Christian Assocs. of the U.S.*, No. 3:10-CV-88, 2010 WL 4668437, at

*3 (S.D. Ind. Nov. 9, 2010).

Collazo has the burden of establishing personal jurisdiction, though without the benefit of

an evidentiary hearing, she need only make a *prima facie* showing of the jurisdictional facts.

*Tamburo*, 601 F.3d at 700; *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773,

782 (7th Cir. 2003).  At this stage, I must accept as true all well-pleaded facts in the complaint

and resolve any factual disputes in Collazo's favor.  *Id*.

To confer jurisdiction, due process requires that a defendant has purposefully established

"minimum contacts" with the forum state "such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945) (internal citations and quotations omitted); *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 474 (1985).  Crucial to this analysis is a showing that the defendant "should

reasonably anticipate being haled into court [in the forum State]" because it "purposefully

avail[ed] itself of the privilege of conducting activities" there.  *Burger King*, 471 U.S. at 474-75.

Personal jurisdiction can be general or specific depending on the extent of the

defendant's contacts.  *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston*

*Metroplex*, 623 F.3d 440, 444 (7th Cir. 2010).  "If a defendant's contacts are so extensive that it

is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of

action arising in any place.  More limited contacts may subject the defendant only to specific

personal jurisdiction, in which case the plaintiff must show that its claims against the defendant

arise out of the defendant's constitutionally sufficient contacts with the state."  *uBID, Inc. v.*

*GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).  Either way, the ultimate constitutional

question is whether the defendant had "certain minimum contacts with [the forum] such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).

Collazo contends that Defendants are subject to both general and specific jurisdiction in

Indiana.  For the reasons I discuss below, I find that Defendants are subject to neither.

**A.      General Personal Jurisdiction**

General jurisdiction is permitted only when the defendant has "continuous and systematic

general business contacts" with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 415–16 (1984).  This standard, which is considerably more stringent than the

standard for specific jurisdiction, "requires the defendant to have such extensive contacts with

the state that it can be treated as present in the state for essentially all purposes."  *uBID*, 623 F.3d

at 425-26 (citing *Tamburo*, 601 F.3d at 701; *Purdue Research Found.*, 338 F.3d at 787).

4

**1.      Defendants' Websites**

Collazo's first argument – that general jurisdiction may be based on the supposed

*interactivity* of the enterprise.com and erac.com websites – requires a word of terminological

clarification.  "Interactive" is a legal term of art that derives from the sliding-scale jurisdictional

test for Internet-based cases employed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc*., 952

F. Supp. 1119, 1124 (W.D. Pa. 1997).  Under *Zippo,* and other opinions that have adopted

*Zippo*'s analytical framework, "interactive" websites, which allow the exchange of information,

are more likely to support personal jurisdiction than the "passive" websites at the other end of

the scale, which do not permit the user to exchange information with the host computer.  *Zippo*,

952 F. Supp. at 1124.

The Seventh Circuit has declined to adopt *Zippo*'s approach for cases involving Internet

contacts, *see Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010); *Tamburo*, 601 F.3d

at 703 n.7, including by declining to decide "what level of 'interactivity' is sufficient to establish

personal jurisdiction based on the operation of an interactive website."  *Hemi Group*, 622 F.3d at

759 (quoting *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004)); *see also uBID*,

623 F.3d at 431 (the interactivity of a defendant's website "is relevant to, but not dispositive of,

the sufficiency" of the defendant's contacts).

The maintenance of a public Internet website, without more, will not establish general

jurisdiction.  *uBID*, 623 F.3d at 426; *Tamburo*, 601 F.3d at 701.  In fact, in the Seventh Circuit,

even the operation a "highly interactive" website will not, alone, subject a defendant to general

jurisdiction.  *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see also Hemi Group*, 622

F.3d at 760 ("Courts should be careful in resolving questions about personal jurisdiction

involving online contacts to ensure that a defendant is not haled into court simply because the

defendant owns or operates a website that is accessible in the forum state, even if that site is

'interactive'"); *uBID*, 623 F.3d at 427-29.

The proper jurisdictional test for Internet-based cases is instead a matter of determining

whether a defendant has established sufficient minimum contacts with a forum to justify the

exercise of personal jurisdiction over it in the forum state. *Hemi Group*, 622 F.3d at 759. Thus,

even if I assume that the Defendants here operate interactive websites (and this is by no means

clear, based on Collazo's submissions), the question is not how interactive those sites are, but

whether Defendants, through those sites, in some way *targeted* Indiana's market. *be2*, 642 F.3d

at 559; *uBID*, 623 F.3d at 427-29.

Collazo, however, has introduced no evidence that Defendants, through these websites,

targeted the Indiana market. The fact that both websites are accessible in Indiana is insufficient

to show conduct targeted at Indiana. *See Mobile Anesthesiologists*, 623 F.3d at 446 (defendant's

operation of website that could be accessed in Illinois was not sufficient to support personal

jurisdiction). Moreover, courts have consistently refused to exercise jurisdiction based solely on

the fact that reservations can be placed and purchased through a website. *See*

*Apollo Galileo USA P'ship v. Am. Leisure Holdings, Inc.,* No. 07 C 4403, 2009 WL 377381, at

*4 (N.D. Ill. Feb. 11, 2009) ("booking and paying for travel arrangements ( *i.e*., making

reservations by way of the Internet) is insufficient to subject an out-of-state resident to personal

jurisdiction in Illinois absent evidence that the company specifically or deliberately directs its

activities to Illinois residents"); *Breschia v. Paradise Vacation Club, Inc*., No. 02 C 3014, 2003

WL 22872128, at *4 (N.D. Ill. Dec. 4, 2003) ("website that allows customers to make and pay

for reservations over the Internet for lodging in foreign states . . . is not a continuous and systematic contact with Illinois that justifies general jurisdiction").

It may be true, as Collazo's attorney avers, that Indiana residents can make reservations to rent a vehicle through the enterprise.com website [DE 27-3, ¶ 5], or search for employment opportunities through the erac.com website [DE 27-3, ¶ 6; *see also* http://www.erac.com/default.aspx (last visited September 30, 2011)]. But so can residents of any state in the U.S., as well as citizens in Canada, Ireland, Germany and the U.K. [*Id*.; DE 27-4]. And, tellingly, Collazo never contends that she made any reservations through either of these sites. Nor does she contend that consumers generally can make payments for goods or services, or enter into contracts with Defendants, through either of these sites. Indeed, the screen shot she provides for the enterprise.com website does not include a menu that would permit a user to enter a credit or debit card number, or otherwise purchase good or services [DE 27-4]. *Cf. uBID*, 623 F.3d at 428-29 (finding that defendant targeted Illinois market through advertising campaign that produced hundreds of thousands of customers in the state and millions of dollars in annual revenues).

Moreover, Defendants present undisputed evidence that Enterprise Holdings and Prerac have no offices or employees in Indiana [DE 22-2, ¶ 4; DE 22-3, ¶ 5]. And neither is registered with Indiana's Secretary of State, or has an agent for service of process in Indiana [DE 22-2, ¶ 5; DE 22-3, ¶ 4]. On this record, no matter how interactive Defendants' websites may be, Defendants' maintenance of these sites, alone, does not approach the level of "continuous and systematic" contacts necessary to establish general personal jurisdiction.

## 2.      Alter-Ego

Collazo's alternative theory of general jurisdiction is based on the premise that

Enterprise's subsidiaries, including those doing business in Puerto Rico (Prerac) and Indiana, are

alter egos of Enterprise Holdings.  Although it is by no means clear, Collazo appears to argue

that each of these entities functions with a single identity, which supposedly establishes general

jurisdiction over Defendants on the basis of the contacts of the subsidiary doing business in

Indiana.[1]

To begin with, Enterprise Holdings' status as the parent of the Enterprise subsidiary in

Indiana, alone, does not establish general jurisdiction over Enterprise Holdings.  A parent

corporation generally may not be held liable for the actions of a subsidiary "unless the legal

separateness of parent and subsidiary has been disregarded in a wide range of corporate matters."

*Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989).  Thus, "personal jurisdiction cannot

be premised on corporate affiliation or stock ownership alone where corporate formalities are

substantially observed and the parent does not exercise an unusually high degree of control over

the subsidiary."  *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express*

*World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).

Nor has Collazo established that general jurisdiction over Enterprise Holdings is proper

on a theory that Prerac and Enterprise's Indiana subsidiary are its alter egos.  All that Collazo

---

[1] Collazo never actually asserts that her alter-ego theory of jurisdiction is based on imputing the contacts of Enterprise's Indiana subsidiary to Enterprise Holdings.  But that seems to be the thrust of her argument.  Moreover, though she argues that Prerac is also an alter ego of Enterprise Holdings, she never explains how that is supposed to establish jurisdiction over Prerac in Indiana.  However, her theory appears to be that the contacts of Enterprise's Indiana subsidiary can be imputed to Prerac as well, since these entities along with the parent and all other Enterprise subsidiaries form a single undifferentiated corporate entity.

has presented in support of this theory is a screen shot from the enterprise.com website [DE 27-9], and an affidavit in which Collazo's attorney states that the screen shot reveals no evidence of a parent-subsidiary relationship, and shows that all Enterprise entities use a common logo, trademark, and the like, along with shared contact and customer support information [DE 27-3, ¶¶ 9-10].

This evidence falls far short of showing that Enterprise Holdings exerts the "unusually high degree of control" over its subsidiaries needed to establish an alter ego relationship, much less to establish Collazo's theory that each of these entities functions with a single corporate identity. To begin with, the screen shot that Collazo relies on does not reference either of the Defendants or the Enterprise subsidiary doing business in Indiana. So the fact that it supposedly contains "no evidence of a parent/subsidiary relationship" between those entities is of no significance. More fundamentally, even if these entities do share a common website for marketing purposes, along with shared contact information and customer support, that alone is not sufficient to impute the contacts of a subsidiary (like Enterprise's Indiana subsidiary) to a parent (like Enterprise Holdings), much less to a separate subsidiary (like Prerac), for personal jurisdictional purposes. *See Central States*, 230 F.3d at 939 ("the provision of administrative services by a parent for a subsidiary does not trigger personal jurisdiction over the parent"; fax address shared by parent and subsidiary was insufficient); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (parent advertising its subsidiaries' products and services in national media was insufficient to subject parent to jurisdiction); *accord Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995) (district court properly rejected argument that the presence of the parent's logo in subsidiary's promotional literature justified piercing the

corporate veil).

Collazo also points to features of Enterprise's erac.com website, which she contends establish that Enterprise Holdings and its subsidiaries "function with a single identity" – specifically, the fact that a screen shot from this site [DE 27-8] references Enterprise's 7,000 branches without also discussing "separate corporate/ownership structures" [DE 28 at 11]. Here again, the absence of such information on this screen shot provides no evidence that Enterprise exerted the "unusually high degree of control" over its subsidiaries needed to premise jurisdiction over Enterprise Holdings on the contacts of its Indiana subsidiary, let alone to base jurisdiction over Prerac on such contacts. And even if the absence of such information showed that Enterprise Holdings controlled or directed its subsidiaries to some extent, that, alone, would still be insufficient. See *Purdue Research Found.*, 338 F.3d at 788 n.17 ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent.") (quoting *IDS Life Ins. Co.*, 136 F.3d at 540).

By contrast, Defendants present undisputed evidence, in the form of an affidavit by Robert Smith, the vice president of Enterprise Holdings, that Enterprise Holdings does not operate the Enterprise Rent-A-Car brand in Indiana [DE 22-3, ¶¶ 2 & 6]. That brand, according to Smith, is operated by a number of Enterprise Holdings' subsidiaries,[2] each of which, along with Prerac, "retains ultimate authority to make decisions regarding their own general business policies and day-to-day operations, . . . and hiring, firing promotions [and] compensation" [DE 22-3, ¶ 10]. Smith avers, more generally, that Enterprise Holdings observes all corporate

_____

[2] These are: Enterprise Leasing of Indianapolis, Enterprise Leasing Company of Chicago, Enterprise RAC of Cincinnati and Enterprise Rent-A-Car Company of KY [DE 22-3, ¶ 7].

formalities with respect to Prerac and each of the other "separate and distinct" corporate entities

operating the Enterprise Rent-A-Car brand in Indiana [DE 22-3, ¶ 9].

Collazo's failure to rebut this evidence, along with her inability to present any evidence

that Enterprise Holdings disregarded the legal separateness of its subsidiaries doing business in

Indiana and Puerto Rico, prevents her from establishing a *prima facie* case for general

jurisdiction based on an alter ego theory.  *Cf. Central States*, 230 F.3d at 945 (corporate

affiliation insufficient basis for jurisdiction over parent where subsidiary observed "all corporate

formalities").

Having found that the Court lacks general personal jurisdiction over the Defendants, I

turn now to the issue of specific personal jurisdiction.

## B.      Specific Personal Jurisdiction

Specific personal jurisdiction "turns on a particularized assessment of the 'relationship

among the defendant, the forum, and the litigation.'"  *Saylor v. Dyniewski*, 836 F.2d 341, 344

(7th Cir. 1988) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  In particular, specific

jurisdiction is appropriate where (1) the defendant purposefully availed himself of the privilege

of doing business in a state, (2) the alleged injury "arises out of or relates to" the defendant's

activities in that state, and (3) the exercise of jurisdiction comports with traditional notions of

fair play and substantial justice.  *Tamburo*, 601 F.3d at 702; *see also uBID*, 623 F.3d at 429

("Mere minimum contacts [] are not sufficient to establish specific personal jurisdiction.").  This

test aims to "ensure that an out-of-state defendant is not bound to appear to account for merely

'random, fortuitous, or attenuated contacts' with the forum state."  *Tamburo*, 601 F.3d at 702

(quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

11

I need only address the "arises out of or relates to" element of this test, since Collazo's

failure to establish this element is dispositive of her argument for specific jurisdiction.

The Seventh Circuit recently discussed the applicable standard for determining whether a

plaintiff's injury arises out of or relates to a defendant's forum-related activities in *uBID*.  There,

the Seventh Circuit noted the competing approaches adopted by other circuit courts, and then

declined to endorse either the proximate cause approach – which requires that the defendant's

contacts to a forum be the legal cause of the plaintiff's injuries for the injuries to arise out of

those contacts – or the but-for approach – which only requires that the plaintiff's injuries would

not have occurred but-for the defendant's contacts to the forum.  *uBID*, 623 F.3d at 430 (finding

the but-for approach "vastly overinclusive" while the proximate cause approach "would exclude

too many claims"); *see also Tamburo*, 601 F.3d at 708 (comparing the breakdown in the

circuits).  Instead, *uBID* endorsed the "middle-ground approach" adopted by the Third Circuit in

*O'Connor v. Sandy Lane Hotel, Co.*, 496 F.3d 312, 322 (3d Cir. 2007), which avoids a

mechanical test in favor of a more pragmatic focus on the "tacit quid pro quo that makes

litigation in the forum reasonably foreseeable."  *uBID*, 623 F.3d at 430 (quoting *O'Connor*, 496

F.3d at 322).  In other words, "the precise causal relationship between contacts and claim [is] not

important," so long as the reciprocal relationship between the parties makes jurisdiction in the

state foreseeable.  *Id*.

Here, the relationship between the websites Collazo references, and the injury she

sustained on the trolley in Puerto Rico, are simply not related to one another at all. As for the

erac.com website, Collazo herself acknowledges that it is "meant to serve as a venue for the

initial application, hiring, and employment processes for careers" with Enterprise [DE 28 at 7].

12

But she offers no theory as to how that site is connected to her alleged injuries. Indeed, she does not even contend that the erac.com website had anything to do with her trip to Puerto Rico, or her agreement with Enterprise to rent a car there.

The enterprise.com website also falls short of the mark for establishing specific jurisdiction. That site appears at least to permit customers to make reservations to rent a vehicle. And Collazo's trolley injury is, at least in some sense, related to her decision to rent a car in Puerto Rico. But this is insufficient to establish the relatedness required for specific personal jurisdiction for a number of reasons.

First, Collazo does not contend that she actually used that site to book a reservation for her rental car in Puerto Rico, only that the site *permits* Indiana residents to make such reservations [DE 28 at 9]. Second, even if Collazo had made a reservation in Indiana through the enterprise.com website, there are no allegations in the complaint, and Collazo does not argue, that the injuries she sustained in Puerto Rico from the trolley's sudden stop somehow resulted from the enterprise.com website. On the contrary, she alleges that her injuries occurred because the trolley was not equipped with a seatbelt [DE 16, ¶ 17]. So even if Collazo had used the enterprise.com website in Indiana to reserve a car, the injury she suffered in Puerto Rico did not arise out of that reservation for jurisdictional purposes. *Cf. Elayyan v. Sol Media, SA*, 571 F. Supp. 2d 886, 905 (N.D. Ind. 2008) (injuries sustained in Mexican hotel's swimming pool could not have arisen out of plaintiff's use of defendant's website in Indiana to book hotel reservation).

Collazo's attempt to base specific jurisdiction on the contract she allegedly entered into with Defendants for a rental car in Puerto Rico [DE 16, ¶ 6] fares no better. Collazo fails to produce any evidence of such an agreement. Collazo does not even allege that she negotiated or

13

executed an agreement with Defendants in Indiana.  Indeed, for all I can determine from the

record before me, any agreement between Collazo and Defendants was entered into in Puerto

Rico, not Indiana.[3]  It's true that Collazo contends that Defendants' websites provide Indiana

citizens with the ability "to make reservations for rental agreements, . . . in and outside of

[Indiana]" [DE 28 at 9].  But, as noted, she provides no evidence that she even made a

reservation with Defendants via an Indiana-accessed website, much less entered into a rental

agreement from such a site.

 In any event, even if Collazo had entered into a rental agreement with Defendants, that,

alone, would not establish specific jurisdiction.  *Purdue Research Found.*, 338 F.3d at 781

("contracting with an out-of-state party alone cannot establish automatically sufficient minimum

contacts in the other party's home forum") (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478

(1985)); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (same).  Collazo

would still need to present evidence showing how her injuries arise out of, or are connected with,

Defendants' activities in Indiana such that litigation in that forum would be reasonably

foreseeable.  *See uBID*, 623 F.3d at 430.  Because she has not done this, she fails to meet her

burden of establishing specific personal jurisdiction.

## II. Dismissal or Transfer

 The next issue is whether the case should be dismissed or transferred.  Collazo requests

that I transfer this case to the district court in Puerto Rico, pursuant to 28 U.S.C. § 1406(a),

---

[3]Defendants, for their part, contend that "no contract [is] established by virtue of the mere reservation.  Rather, once a customer arrives at the rental destination, presents a valid driver's license showing the customer is of age under [Enterprise's] guidelines . . . agrees on insurance terms, and signs the rental agreement, a contract is then and there established" [DE 31 at 7].

should I find that this Court lacks personal jurisdiction over the Defendants.

This Court has the power to transfer the case to an appropriate venue pursuant to 28 U.S.C. § 1406(a), notwithstanding that it has no personal jurisdiction over the Defendants. *See Hapaniewski v. City of Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). Under 28 U.S.C. § 1406(a), a district court may "transfer a case brought in the wrong division or district" to a district where it might have been originally brought if it is "in the interest of justice." If, on the other hand, I deny Collazo's transfer request, I must dismiss her suit. *Hapaniewski*, 883 F.2d at 579 (citing 28 U.S.C. § 1406(a)).

In deciding whether transfer is appropriate under Section 1406(a), courts look at whether the transfer is in the interests of justice; that is, whether the transferee forum is convenient to the parties and witnesses as well as what impact transfer has on the efficient administration of the court system. *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530 (7th Cir. 2002) (noting that both section 1404(a) and 1406(a) have similar analyses).

Here, the most compelling reason why the interests of justice favor transfer rather than dismissal is identified by Defendants – namely, that Collazo's tort claim likely would be barred were she forced to re-file after a dismissal. "A compelling reason for transfer is that the plaintiff, . . . will be time-barred if [her] case is dismissed and thus has to be filed anew in the right court." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *see also Wild*, 292 F.3d at 531 (transfers are appropriate when plaintiff's claims otherwise would be time-barred). If Collazo must re-file in the District of Puerto Rico, where Defendants concede that venue is assured [DE 31 at 15], Puerto Rico law likely would apply to her personal injury claim, since her injury occurred there. *See Bahia Las Minas Corp. v. General Elec. Co.,* 267 F. Supp. 2d 154, 156 (D. P.R. 2003) ("this

15

Court . . . adopts the rule that in situations where a case is transferred to cure a jurisdictional

defect, the Court must apply the law of the transferee district"); *see also Montalvo v. Gonzalez-*

*Amparo*, 587 F.3d 43, 46 (1st Cir. 2009) (applying Puerto Rico tort law, including statute of

limitations, in diversity case where injury occurred in Puerto Rico).  And Puerto Rico has a one-

year statute of limitations for personal injury claims.  *See* 31 L.P.R.A. § 5298(2); *see also*

*Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 12 (1st Cir. 2005) (noting § 5298's

one-year limitations period).

For all I can determine on the basis of the sparse record before me, the clock on Collazo's

tort claim started to run on the April 27, 2010 date of her injury – unless notice of the injury or

the party responsible for it was delayed.  *See Lopez-Flores v. Cruz-Santiago*, 526 F. Supp. 2d

188, 190 (D. P.R. 2007).  This means that the limitations period for that claim likely expired on

or about April 27, 2011.  *See Vargas-Ruiz v. Golden Arch Development, Inc*., 283 F. Supp. 2d

450, 455-56 (D. P.R. 2003).  Thus, if I decide to dismiss rather than transfer the case, Collazo's

tort claim could well be time-barred.

Defendants, relying on *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir. 1988), oppose

transfer on the ground that Collazo should bear the risk of failing to file in the District of Puerto

Rico.  I disagree.  *Saylor* affirmed this district court's decision to dismiss rather than transfer

because the plaintiffs had "gambled their case on an extremely dubious theory of personal

jurisdiction."  *Saylor*, 836 F.2d at 345.  That's not what Collazo did here.

Granted, she made a mistake in calculating that the interactivity of Defendants' websites

would establish personal jurisdiction.  But numerous courts have recognized that the operation of

an interactive website may subject a defendant to (general or specific) personal jurisdiction.  *See*

16

*Jennings*, 383 F.3d at 549 (collecting cases). So her mistake does not rise to the level of the sort of elementary error that can, in some instances, justify the penalty of forever barring a plaintiff from bringing a claim, particularly considering that Collazo is not a commercially sophisticated party. *Cf. Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003) (dismissal proper because plaintiff's choice of forum was "an obvious mistake made by a sophisticated party"); *Cote*, 796 F.2d at 985 ("If [plaintiff's] mistake were one easy to commit, the penalty [of dismissal] might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion. But the mistake was elementary."); *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980) (distinguishing mistake from "blatant disregard[ ] for the elementary principles of in personam jurisdiction").

Defendants also argue that transfer would be futile since Collazo did not name Prerac, the Enterprise subsidiary doing business in Puerto Rico, until she filed her amended complaint on June 16, 2011 [DE 16], which is after the limitations period that Defendants suppose the district court in Puerto Rico would apply to Collazo's tort claim. But Defendants ignore that, pursuant to Rule 15(c), Collazo's amended complaint will likely relate back to the date of the original complaint, in which case her action would not be time-barred as to Prerac. *See* Fed. R. Civ. P. 15(c)(1); *see also Ayala-Gonzalez v. Toledo Davila*, 623 F. Supp. 2d 181, 188 (D. P.R. 2009).

It's not for me to predict how a district court in Puerto Rico would decide this issue. But the parent-subsidiary relationship between Enterprise Holdings and Prerac, and the apparently substantial identity between the claims Collazo asserts against them, suggests that Collazo may satisfy Rule 15(c)'s relation back standard. *Cf. Figueroa v. J.C. Penney Puerto Rico, Inc.*, 247 F.R.D. 274, 281 n.7 (D. P.R. 2007) ("Courts have found a sufficient identity of interest [for

17

relation back purposes] when the original and added plaintiffs are a parent corporation and a wholly-owned subsidiary."), *rev'd on other grounds*, 568 F.3d 313 (1st Cir. 2009).

And, anyway, Defendants overlook that Collazo's amended complaint asserts a claim for breach of contract [DE 16], for which the Puerto Rico Civil Code prescribes a fifteen-year limitations period. *See Caribbean Mushroom Co., Inc. v. Gov't Dev. Bank For Puerto Rico*, 102 F.3d 1307, 1312 (1st Cir. 1996) (citing 31 L.P.R.A. § 5294); *see also Nazario Martinez v. Johnson & Johnson Baby Prods., Inc.*, 184 F. Supp. 2d 157, 162 (D. P.R. 2002) ("statue of limitations in this District is the residual contract statute found in the Puerto Rico Civil Code, . . . which provides fifteen years for any action 'for which no special term of prescription has been fixed'").

In the end, whether the breach of contract claim is a viable one or whether the amended complaint will relate back to the original complaint under Rule 15 is not for me to decide. These are decisions best left for my colleague in Puerto Rico. All I find here is that, rather than dismissal, the equities favor transfer of this action, pursuant to 28 U.S.C. § 1406(a), to the District of Puerto Rico, where Collazo's injury occurred and where Defendants represent that venue is assured [DE 31 at 15].

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss [DE 19 & 22] are **DENIED**. Moreover, because the Court finds that it lacks personal jurisdiction over the Defendants, Defendants' requests for a finding of improper venue, pursuant to Rule 12(b)(3), are **DENIED AS MOOT**. Finally, the Court hereby orders the Clerk of this Court to **TRANSFER** this action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the District of Puerto

Rico, for all further proceedings.

**SO ORDERED**.

ENTERED: October 5, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
